In the Matter of the Judicial Settlement of the Account of JAMES BROWN, as former General Guardian of ELIZABETH SANDISON, an Infant.

*Sureties of a general guardian — liability of, for sums paid to such guardian by himself as executor; credited to him on his accounting as executor.*

James Brown, the general guardian of an infant who became a residuary legatee under a will of which Brown was the executor, on his accounting as such executor, credited himself as executor with certain funds alleged to have been paid to himself as guardian, and filed vouchers for the payments. In fact the payments had never been made. He was subsequently removed as guardian, and on his accounting as guardian he charged himself, as guardian, with the amounts which, as executor, he had previously credited himself as paid to himself as guardian, and was ordered by the court to pay to the guardian of the infant who succeeded him a certain sum of money, which payment Brown, being insolvent, failed to make.

An application was thereupon made by the sureties upon Brown's bond, as guardian, to have the accounting as guardian opened, under a claim that Brown's payments as executor, to himself as guardian, were irregular and should only have been made pursuant to a decree directing them and requiring the guardian to give a bond to cover them, and that Brown was liable for the deficiency as executor and not as guardian.

*Held*, that an omission of the surrogate to require the bond could not avail a guardian receiving the money.

That he must account for it, and on his failure to do so, his sureties must, there being no evidence to show that the infant or her special guardian on the executor's accounting did not fully believe the accounts to be true.

Appeal by George McGrath and Charles M. Johnson, as sureties on the bond of James Brown, from an order of the surrogate of the county of New York, entered in the office of the clerk of the New York Surrogate's Court on the 2d day of May, 1893, denying a motion to open a decree made on the 5th day of January, 1893, on the accounting of said Brown as general guardian of Elizabeth Sandison.

The amount with which Brown was chargeable upon such accounting included certain payments with which Brown credited himself in his account as executor, as having been made to himself as guardian, which were in fact never made, and with which the sureties claimed that he should not be charged as guardian.

*Black & King*, for the petitioners (appellants).

*John C. Clark*, for the respondents.

Parker, J.:

The appellants, sureties on a general guardian's bond, petitioned the surrogate that the decree settling the guardian's accounts be opened, to the end that the sureties might be permitted to show that there was not anything due to the ward from the general guardian.

James Brown was the general guardian of the infant, and also the executor under the will of her grandmother, in which capacity he received certain moneys bequeathed to the infant.

The sureties insist that the general guardian was, in the decree settling his accounts, wrongfully charged with moneys he held as executor. The moneys belonged to the infant in either event, but it

is urged that Brown as executor, and not as general guardian, should be decreed to pay them.

The surrogate denied the application. An appeal having been taken to this court, his determination must be reviewed as if an original application had been made to this term. (Code Civ. Proc. § 2481, subd. 6.)

Briefly, the history of the parties, so far as material in this proceeding, is as follows : James Brown was appointed general guardian of Elizabeth Sandison, June 8, 1880, appellants being his sureties. On the same day letters of administration on the estate of Elizabeth Sandison, deceased, mother of the infant, were issued to him, appellants again becoming his sureties.

Six months later Sarah Armstrong, grandmother of the infant, died leaving a will, in which she named the infant as residuary legatee, and appointed Brown executor.

Being compelled to a final judicial settlement as executor, he filed a verified account on June 3, 1890, in which he credited himself, as executor, with having paid to himself, as general guardian of the infant Elizabeth Sandison, the residuary legatee of Sarah Armstrong, the following sums : 1882, April 19, $2,000 ; 1885, January 15, $1,100 ; 1885, March 26, $500 ; 1887, February 20, $300.

In support of his account he filed vouchers and a decree was thereupon entered, settling his accounts, and discharging him as executor. Nearly eighteen months later, on February 4, 1892, Brown was removed from his office as general guardian, and thereafter required to render an account.

In the account he charged himself as guardian with having received from himself as executor, the sums with which he credited himself in his accounts as executor. In the decree, which bears date January 5, 1893, he was ordered to pay over to the present general guardian of the infant the sum of $2,512.86. Having failed to make the payment, an action was brought against the sureties to recover such amount, hence this proceeding, which has for its apparent object the shifting of the burden imposed by the decree from the general guardian, who has sureties, to the executor, who has none.

As the executor is insolvent the ultimate result of the contest must be that either the sureties or the ward must lose the sum which the executor guardian has misappropriated.

The sureties contend that the only way in which he could have transferred the moneys from himself as executor to himself as general guardian would have been in pursuance of a decree of the Surrogate's Court, requiring that the general guardian first give a new bond, conditioned to faithfully apply such legacy or distributive share. (Code, § 2746.) Cases are cited where the Surrogate's Court has required this to be done, and it is now argued that in default of such a bond, a payment to a guardian, although pursuant to a decree, would be illegal.

We do not understand such to be the effect of the statute, or that the decisions quoted attempt to give it such a construction.

The statute requires the surrogate to exact such a bond from the guardian, to more certainly assure the property of the infant's estate, because it frequently happens that a bequest to an infant succeeds the granting of letters of guardianship, and, therefore, is not considered in determining the value of the infant's estate as a basis for the bond. And this provision of law is generally enforced, but an omission to do so could not avail a guardian receiving the moneys.

He could not say, " I cannot be compelled to account for these moneys, because the Surrogate's Court omitted to decree that I should give a special bond, as provided by statute."

He would not be permitted to dispute that moneys paid to him under such circumstances were the moneys of the ward, and the statute as well as his bond obliges him " to render a true and just account of all moneys and property received by him, and of the application thereof."

So, if he did receive these moneys as general guardian, he must account for them, and that for which he is chargeable on an accounting, his sureties are responsible. On the accounting as executor he credited himself with having paid to himself as general guardian the sum of $3,900, but urge the appellants, " we are not bound by his acts as executor, and it was in that capacity he presented his accounts for settlement." True, but in support of that account he filed receipts for the several amounts from himself as general guardian.

On the strength of those receipts he was discharged from all liability as executor. Thereafter the general guardian could not be

heard to deny the right of the ward to a decree charging him with such amount, nor would the sureties be in any better position than their principal.

An exception to this general rule would be presented if a guardian and ward should conspire together for the purpose of creating a situation where the guardian would be relieved at the expense of his sureties. But that is not this case.

There is no evidence here that would justify a finding that the ward, or the special guardian representing her on the final settlements, did not fully believe the accounts presented by the executor and guardian to be true.

The order should be affirmed, with ten dollars costs and printing disbursements.

O'BRIEN and FOLLETT, JJ., concurred.

Order affirmed, with ten dollars costs and printing disbursements.